IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **PETER WENK,** *et al.* | : | |
| | : | Case No. 2:12-CV-474 |
| **Plaintiffs,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | |
| **EDWARD O'REILLY,** *et al.* | : | Magistrate Judge Kemp |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on the Defendants' Motion to Dismiss (the "Motion") Plaintiff's Complaint. For the reasons stated below, the Motion is **DENIED**.

### II. BACKGROUND

For the purposes of this Motion, this Court largely adopts Plaintiffs' statement of facts because Plaintiffs, as non-movants, are entitled to favorable inferences at this stage. Plaintiffs in this case are Peter and Robin Wenk ("Plaintiffs"). Plaintiffs are husband and wife, and are parents to three daughters. One of their daughters, M.W., is 17 years old and is a student at Grandview Heights City Schools.

There are two defendants remaining in this case, both employees of Grandview Heights City Schools ("Grandview Schools"). Edward O'Reilly is the Superintendent (the "Superintendent"), and Dr. Nancy Schott is the Director of Pupil Services (the "Director").[1] Plaintiff has sued each of Defendants in their individual capacities.

---

[1] Three other defendants in the original Complaint—Karla Hayes and Chris Sidon, both teachers, and Principal Dawn Sayre—have been dismissed from the action.

M.W. receives special educational services from Grandview Schools. Before the 2011-2012 school year, Plaintiffs met with representatives of the school to set goals for M.W. for the coming year.[2] As the school year began, Plaintiffs became concerned that Grandview Schools had departed from M.W.'s educational and social goals as discussed at the meeting. Plaintiffs met with Principal Dawn Sayre (the "Principal") and the Director on September 2, 2011, to address those concerns. When neither the Principal nor the Director took any action in response to that meeting, Plaintiffs contacted the Superintendent regarding their concerns. The Superintendent refused to involve himself, however, and stated that he would affirm the decisions taken by his subordinates. Subsequently, Plaintiffs voiced their concerns to the Grandview Board of Education President, Katherine Lithgow. Lithgow also refused to become involved and redirected the Plaintiffs to the Superintendent.

After Plaintiffs' efforts to obtain additional educational services for their daughter were unsuccessful, Plaintiffs contacted attorney Sue Tobin at the Ohio Legal Rights Center for assistance. On October 13, 2011, Plaintiffs informed the Director that they had retained an attorney and requested a meeting. The Director discouraged Plaintiffs from involving an attorney and the Plaintiffs agreed to a meeting without the attorney. This second meeting with the Principal and the Director occurred on October 19, 2011.

A hostile environment permeated the second meeting and, at one point, the Principal began shouting at Plaintiffs. The meeting ended shortly thereafter. After that meeting, Plaintiff spoke again with Lithgow of the Grandview Board of Education. Plaintiffs expressed their concern that Plaintiffs' relationship with the Principal and Director had severely deteriorated and

---

[2] Every year M.W. has attended Grandview Schools, Plaintiffs have met with representatives of Grandview Schools before the school year began to set goals for M.W. for the coming year.

advised Lithgow that Plaintiffs had again contacted an attorney. Lithgow again declined to become involved, but she informed the Superintendent that Plaintiff had contacted her.

Unbeknownst to Plaintiffs, Karla Hayes—a teacher in Grandview Schools—had for some time been documenting allegations of abuse against Plaintiffs. This documentation included, inter alia, statements attributed to M.W. and her parents which Plaintiffs maintain they had never made and which were not correct. On October 24, 2011, Hayes communicated these allegations of abuse to the Principal and the Director. The Principal and the Director then solicited more allegations regarding Plaintiffs from Hayes and another teacher, Chris Sidon. Hayes and Sidon provided the Principal and the Director with numerous allegations against Plaintiffs. The Principal and the Director informed the Superintendent that they were gathering these allegations and the Superintendent, allegedly with knowledge that the allegations were false, approved the Principal's and the Director's conduct. Plaintiffs assert that both Defendants—the Director and the Superintendent—knew that the accusations of abuse were patently false or that the accusations painted the Plaintiffs' family in a false light. Plaintiffs contend that Defendants knowingly gathered false allegations against them in order to intimidate Plaintiffs so that they would not pursue their grievances regarding M.W.'s education services.

On November 17, 2011, Plaintiffs met again with the Principal and the Director.[3] The next day, with the knowledge and approval of the Superintendent, the Director contacted Franklin County Children Services ("FCCS") and alleged that Plaintiffs were responsible for abuse and medical neglect of M.W. FCCS notified the Grandview Heights Police Department of the allegations on November 18, 2011. Grandview Police opened an investigation into the allegations. Plaintiffs did not learn of the allegations until November 21, 2011, when a caseworker from FCCS appeared at their home and requested interviews. Plaintiffs submitted to

---

[3] Other members of the Grandview Schools staff were also present at this meeting on November 17, 2011.

the interviews and M.W. was also interviewed.  Plaintiffs retained a lawyer to assist them in responding to the FCCS investigation.

Shortly before December 25, 2011, Plaintiffs were contacted by Detective Harper of the Grandview Police. Detective Harper informed Plaintiffs that the Department had opened a criminal investigation into abuse allegations against Plaintiffs.

On January 5, 2012, FCCS notified Plaintiffs that the investigation had been closed and the allegations deemed "unsubstantiated."  Even after FCCS closed the investigation, however, Defendants continued to make allegations against Plaintiffs in connection with the Grandview Police investigation.  Detective Gillespie from the Grandview Police contacted Plaintiffs about the additional allegations. Over three months later, on April 10, 2012, Plaintiffs were informed that the Grandview Police had closed its investigation of the allegations.  No charges were filed.

By the summer of 2012, Plaintiffs had begun to suspect that Karla Hayes, a Grandview teacher, was one of the sources of the allegations. In or around July of 2012, Plaintiffs learned that the Superintendent had assigned Hayes as M.W.'s primary teacher for the coming school year.  Plaintiffs retained the services of a child advocate to express to the Superintendent their objections to Hayes having contact with M.W.  The Superintendent, however, refused to place M.W. with a different teacher.  Later in the school year, Plaintiffs acquired a copy of the documentation of allegations by Hayes which had led to the FCCS and Police investigations. Plaintiffs again, through their advocate, tried to have M.W. reassigned to a different teacher. The Superintendent, knowing that Ms. Hayes had documented numerous accusations against Plaintiffs for nearly two years and that FCCS and the Grandview Police had found the accusations to be unfounded, refused to reassign M.W.

Plaintiffs filed this suit on June 4, 2012.  On January 23, 2013, Plaintiffs filed an Amended Complaint.  (Doc. 56)  The Amended Complaint contains approximately 40 specifically plead facts and states two causes of action.  The first claim is that Defendants retaliated against Plaintiffs for exercising their First Amendment and Fourteenth Amendment rights, in violation of 42 U.S.C. §1983.  The second claim is that the Superintendent undertook this unlawful retaliation with malice toward Plaintiffs and in reckless disregard of the law.  Defendants move to dismiss Plaintiffs' Amended Complaint in its entirety.  The Motion to Dismiss has been fully briefed and is ripe for adjudication.

### III. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) is designed to test "whether a cognizable claim has been pleaded in the complaint."  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).  In considering such a motion, the Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action.  *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir. 1983).  Dismissal under Rule 12(b)(6) streamlines litigation by "dispensing with needless discovery and fact-finding" on claims that are legally untenable in the first place. *See Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

All factual allegations made by a plaintiff are deemed admitted and ambiguous allegations must be construed in her favor.  *Murphy v. Sofamor Danek Gp., Inc.,* 123 F.3d 394, 400 (6th Cir. 1997).  Although "a complaint need not contain 'detailed' factual allegations, its '[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'"  *Ass'n of Cleveland Fire Fighters*

*v. City of Cleveland, Ohio,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).

This liberal standard of review, however, does require more than a bare assertion of legal conclusions. *Allard v. Weitzman,* 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Under federal pleading requirements, a plaintiff's complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what plaintiff's claim is, and the grounds upon which it rests." *Id.* A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Id.* (citations omitted).

A somewhat different pleading standard applies to a § 1983 conspiracy claim within a complaint. Although a plaintiff may assert a conspiracy through circumstantial evidence, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)); *accord Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). The pleading standard that applies to § 1983 conspiracy claims is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

## IV. LAW & ANALYSIS

For a claim of retaliation made pursuant to § 1983 to survive a motion to dismiss, "the plaintiff must show that (1) a person; (2) acting under color of state law; (3) deprived him of his rights secured by the United States Constitution or its laws." *Abdulsalaam v. Franklin County Board of Commissioners*, 637 F.Supp.2d 561, 574 (S.D. Ohio 2009). Defendants do not dispute

that they are persons who were acting under color of state law.  Thus, this Court must determine whether Defendants' alleged actions would, if proved, constitute a deprivation of Plaintiffs' rights under the United States Constitution or its laws.

Plaintiffs allege that Defendants violated Plaintiffs' rights under the First Amendment to the United States Constitution by retaliating against Plaintiffs for exercising those rights.  A First Amendment retaliation claim has three elements:

(1) The plaintiff was engaged in a constitutionally protected activity;

(2) the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and

(3) the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Jenkins v. Rock Hill Local School Dist.*, 513 F.3d 580, 585-86 (6th Cir. 2008).

### A. Constitutionally Protected Activity

With regard to whether a plaintiff was engaged in constitutionally protected activity, the Sixth Circuit's decision in *Jenkins* is instructive.  In that case, two mothers of students with diabetes filed § 1983 suits against school district officials, asserting First Amendment retaliation claims.  513 F.3d at 583-85.  The plaintiffs alleged that school officials had retaliated against them in response to complaints and criticisms lodged by the parents at the school officials and their handling of the special needs of the diabetic students.  *Id.*  On review of the district court's grant of summary judgment for the defendants, the Sixth Circuit explicated the "public concern test," finding that the district court "incorrectly held that [the] speech was not constitutionally protected because it did not touch on a matter of public concern."  *Id.* at 586.  Rather, the court noted, the "public concern test" is intended to balance the interests of government employees in

speaking freely, and those of the State in promoting efficiency in public service.  *Id.*  To achieve this, the test ensures that speech of a government employee is constitutionally protected if it touches upon a matter of public concern.  *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 154).

While the public concern test is invoked in certain situations analogous to public employment, where free speech rights must be balanced against effective management of a government entity, the Sixth Circuit made clear that the test does not apply to First Amendment retaliation claims made against government officials by private citizens.  *Id.* at 587 (citing *Gable v. Lewis*, 201 F.3d 769 (6th Cir. 2000)).  The panel reasoned that "the right to criticize public officials is clearly protected by the First Amendment" and observed that the defendant was unable to produce "any case from the Supreme Court or [the Sixth Circuit] that parents criticizing school officials is off-limits when the speech is not about matters of public concern."  *Id.* at 588.  In fact, "the right to criticize public officials is clearly protected by the First Amendment."  *Id.* (citing *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)).

Here, Defendants grudgingly concede that *Jenkins* stands for the proposition that "certain complaints made to school officials may be constitutionally protected," but assert that "Plaintiffs did not provide sufficient allegations in the Amended Complaint to put Defendants on notice of what activity was supposedly constitutionally protected."  (*Defendants' Reply Brief*, Doc. 73 at 3.)  While Defendants will no doubt dispute Plaintiffs' characterization of the events which led to this action being filed, Plaintiffs set forth their factual account in a clear and coherent manner in the Amended Complaint.  Plaintiffs held multiple meetings with Defendants to complain about the education Grandview Schools provided M.W. and to seek additional educational services.  The fact that Plaintiffs complaints touched on issues governed by the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. 1400 et seq., does not somehow convert this

§ 1983 suit into an action under the IDEA, nor does it alter the fact that Plaintiffs made a complaint to school officials for which school officials allegedly retaliated.

Defendants state that they cannot decipher from the Amended Complaint whether Plaintiffs are alleging the protected conduct was criticism of public officials or attempting to secure additional educational services for M.W.  The distinction Defendants attempt to make is illusory.  Plaintiffs' complained to Defendants about the education M.W. was receiving.  Such a complaint is, de facto, criticism of the school and its officials.  If Plaintiffs were not critical of Defendants' decisions regarding M.W.'s education they would not have complained.  Of course, Plaintiffs' complaints were delivered along with Plaintiffs' proposals for improving M.W.'s education.  The fact that Plaintiffs had ideas about what additional services could assist M.W. does not alter the fact that Plaintiffs offered those suggestions in order to remedy the Defendants' actions, of which Plaintiffs had been critical.  Defendants' argument implies that if Plaintiffs had merely criticized them for their handling of M.W.'s education, without attempting to offer positive suggestions, that the criticism would be constitutionally protected, but that simultaneously making suggestions for extra services removes constitutional protection from Plaintiffs' complaints.  Defendants' suggestion is unsupported by either logic or case law.

Defendants have not identified a case in the Sixth Circuit in which a parent's criticism of or complaint to school officials was not found to be constitutionally protected.  This Court finds that the allegations stated in the Amended Complaint sufficient to identify the constitutionally protected activity in which Plaintiffs claimed to have engaged.  Furthermore, under the law of the Sixth Circuit, Plaintiffs' complaints to school officials were constitutionally protected.  Plaintiffs have, thus, satisfied the first element of a claim for First Amendment retaliation.

## B. Defendants' Adverse Action and Plaintiffs' Injury

The second element of a claim for First Amendment retaliation is that "the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity." *Jenkins*, 513 F.3d at 585-86. Defendants discuss a number of Sixth Circuit cases in which no adverse action was found, but they largely ignore the adverse action in *Jenkins*, the most analogous case. The panel in *Jenkins* held that it was evident the plaintiff satisfied the adverse action elements because "a jury could conclude [defendant's] alleged actions, dismissing [plaintiff's child] from school, being involved in making a false report to Children Services, and refusing to provide home-school education through the services of a tutor, would chill a person of ordinary firmness from engaging in speech." *Id*., at 588-89. While the *Jenkins* panel listed all of defendant's allegedly retaliatory acts, it did not hold that an adverse action must consist of all the acts listed. Rather, the *Jenkins* court listed a number of acts which could form the basis for a jury to find an adverse action. While Defendants correctly point out that M.W. was not dismissed from school, as was plaintiff's child in *Jenkins*, this Court finds that the false report to FCCS alone would chill a person of ordinary firmness from engaging in speech. FCCS has the power to remove a child from the custody of her parents and the Court can imagine few threats more chilling to a parent. If this Court were to find that Defendants' alleged actions were not adverse, any parent who complained to her child's school could be subjected to a false report to child services without any consequences for a school official making the false report. Needless to say, the purpose of child services agencies is not to deter parents from advocating for their children's best interests.

Defendants' argument that "Plaintiffs have not alleged that the notification to Franklin County Children Services or the Police Department led to the deprivation of any constitutional

right" misses the point.  The alleged violation of Plaintiffs' rights is not that the FCCS investigation; the alleged violation of Plaintiffs' rights is the chilling effect on Plaintiffs' First Amendment rights Defendants attempted to produce by making the false report to FCCS. Defendants' acts, as alleged by Plaintiffs, send a clear message: if Plaintiffs complain to or criticize school officials, school officials will abuse their authority by having Plaintiffs harassed with baseless investigation and, potentially, prosecution.  The very fact that Plaintiffs filed this suit demonstrates that Defendants' alleged acts did not produce the chilling effect on Plaintiffs' speech that Defendants allegedly sought to achieve.  That failure would not, however, exonerate Defendants if Plaintiffs' evidence ultimately supports the allegations.  When state officials conspire to prevent a citizen from exercising her rights under the First Amendment, but she thwarts the government's efforts through determination to make herself heard, her fortitude does not legally prejudice her complaint pursuant to § 1983 and she remains entitled to relief.

### C. Motivated as a Response to Plaintiffs' Exercise Constitutional Rights

The Court construes Defendants' argument that there is no alleged causal connection between the adverse action and Plaintiffs' alleged injury as an argument that Plaintiffs have failed to satisfy the third element of a First Amendment retaliation claim.  Defendants' argument, again, is misplaced.  Plaintiffs have alleged such a connection: Defendants knowingly made a false report to deter Plaintiffs from continuing to make complaints regarding M.W.'s education. If, as Plaintiffs allege, Defendants knowingly filed a false report with FCCS to prevent Plaintiffs from pursuing their complaints, Defendants' act was motivated by Plaintiffs' complaints. Plaintiffs also allege that Defendants only began gathering false reports after the Plaintiffs complained multiple times and that it was the day after one such meeting that Defendants called FCCS to report the false allegations.  Defendants point out that in *Jenkins* the plaintiffs produced

specific statements from the defendants that showed a causal connection.  What Defendants fail to take into account, however, is that *Jenkins* was an appeal from a grant of summary judgment; the plaintiffs had already conducted discovery and put evidence in the record.  On a motion to dismiss, courts do not consider evidence, only whether the facts as pled would legally support a claim.  Here, Plaintiffs have alleged that Defendants acts were motivated by Plaintiffs' exercise of their rights.  Whether Plaintiffs are ultimately able to prove Defendants acts were motivated by Plaintiffs' exercise of their rights is appropriately considered only after discovery.

The Court, thus, finds that Plaintiffs have satisfied the third element of a claim for First Amendment retaliation.

### D. Qualified Immunity

While a defendant properly raises the defense of qualified immunity in a motion to dismiss, only if "the plaintiff's allegations [do not] state a claim of violation of clearly established law" is a defendant "pleading qualified immunity [] entitled to dismissal before the commencement of discovery."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Defendants' argument that the Amended Complaint fails to state a claim of violation of clearly established law rests on their other argument, already rejected by this Court, that the Amended Complaint failed to identify the constitutionally protected activity in which Plaintiffs engaged.  This Court found above that the multiple complaints Plaintiffs presented to Defendants regarding M.W.'s education constitutes criticism of public officials.  As the Sixth Circuit has long held, "[t]he right of an American citizen to criticize public officials and policies and to advocate peacefully ideas for change is 'the central meaning of the First Amendment.'"  *Glasson v. City of Louisville*, 518 F.2d 899, 904 (6th Cir. 1975) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 273 (1964)).  Plaintiffs have alleged they were subject to retaliation because of their

complaints to school officials about the acts of school officials.  If proved, that allegation would be a violation of clearly established law under the First Amendment.

### E. Pleading of § 1983 Conspiracy

In the Sixth Circuit, to plead successfully a claim of conspiracy pursuant to § 1983, a plaintiff must allege "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant."  *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985).  Furthermore, "[c]onspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim."  *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987).

The background section of this Opinion lays out a lengthy chain of specific events with the participants specifically identified, all of which are drawn from Plaintiffs' Amended Complaint.  If all the Plaintiffs had written in the Amended Complaint were "vague and conclusory allegations unsupported by material facts," the Court would have had difficulty writing over 1,000 words on the factual allegations in the Amended Complaint.  The Amended Complaint plainly alleges that the Director gathered false allegations with the authorization of the Superintendent and that the Superintendent authorized the Director to make a report of false allegations to FCCS, all with the purpose of deterring Plaintiffs from making further complaints about M.W.'s education.  The Court has difficulty imagining in what way that allegation could be construed as not being an allegation of a single plan.  Defendants state that "[t]here is no indication that the group of Defendants contemplated making a report to FCCS . . . or that the group otherwise planned to use any information shared to injure Plaintiffs."  (*Defendants' Reply*

*Brief*, Doc. 73, at 9.)  Plaintiffs allege precisely that Defendants contemplated making a report to FCCS in order to injure Plaintiffs.  If, by "no indication," Defendants mean that there is no evidence, that argument is not before this Court on Defendants' Motion to Dismiss.  Whether Plaintiffs have evidence to support their allegations is perhaps an issue for a motion for summary judgment.  It is sufficient that Plaintiffs allege that the Director collected false reports knowing of their falsity and the Superintendent both authorized her to collect the reports and authorized her to make a report to FCCS.  In short, the single plan Plaintiffs allege is a plan to make a false report of abuse to FCCS and the conspiratorial objective Plaintiffs allege is the objective for the FCCS investigation to intimidate Plaintiffs so that they would not continue to complain to school officials about M.W.'s education.  Finally, the overt act in furtherance of the conspiracy that Plaintiffs allege is the false report to FCCS.

Plaintiffs have, thus, satisfied all three pleading requirements for a conspiracy claim, and have done so with sufficient specificity to survive a motion to dismiss.

## V. CONCLUSION

Plaintiffs' Amended Complaint alleges specific facts which, if proved, would support a § 1983 claim for violation of Plaintiffs' rights under the First Amendment.  For the foregoing reasons, Defendants' Motion to Dismiss is hereby **DENIED**.

**IT IS SO ORDERED.**

                                       **/s/ Algenon L. Marbley**
                                       **ALGENON L. MARBLEY**
                                       **UNITED STATES DISTRICT JUDGE**

**DATED: September 13, 2013**